The opinion of the court was delivered by
Nioholls, O. J.
On the 11th of February,- 1890, Mrs. Mary Lamb, widow of James K. Nash, filed a petition in the Oivil District Oourt, in which she alleged the death of her husband on the 6th of that month; that he died intestate, leaving no issue; that he left an estate consisting of movable and immovable effects situated in the city of New Orleans, and which composed his share of the community property existing between himself and petitioner; that he left no other prop - erty; that under the law she was entitled to one-half in full ownership of all the community property left by her said husband, and to-the usufruct of the other half to last during her natural life, or until she remarried; that she desired to be recognized and put in possession of said property in both said capacities. She prayed that she be recognized as widow in community of her late husband; that as such she be put in possession of one-half of the property in full ownership, and that she be put in possession of the other half asusufructuary, her usufruct to last and continue during her natural-life, or until she remarry.
Upon this petition the court, on February 12, 1890, rendered an order or judgment, in which it declared that the law and the evidencebeing in favor of the demand of the petitioner she was recognized as the surviving widow in community of Nash, and that as such she be put in possession of one-half in full ownership of all the community property, and that she be put in possession of the other half as usufructuary, the same to continue during her natural life, or until she remarry.
On the 14th of March, 1890, the widow filed another petition, in which, after reciting the judgment above mentioned, she averred that to the best of her knowledge and belief her husband left no heirs; *1575 that he never had any children; that his parents died before him, and he had no brothers, sisters or collaterals; that she was entitled, therefore, to be recognized as the owner of the whole property left by her husband in her capacity of widow in community and sole heir; that under the law, in order to have herself properly put in possession, the taking of an inventory and the appointment of an attorney for absent heirs were necessary; she, therefore, prayed that an attorney be appointed to represent the absent heirs of the deceased, and that an inventory of all the property left by the deceased be made. Upon this petition the court ordered an inventory to be taken as prayed for, and appointed A. Bernau, attorney at law, to represent the absent heirs. An inventory was taken under this order; A. Bernau being present thereat in the capacity of attorney of absent heirs.
On the 11th of July, 1890, the widow of Nash, through her attorneys, obtained from the court a rule on A. Bernau, appointed to represent the heirs of the deceased, to show cause why judgment should not be rendered in her favor recognizing her as sole heir at law of her husband, and sending her into possession of all the property left by him, upon her complying with Arts. 929 and 938 of the Oivil Code. The rule issued on suggestion by her to the court that the deceased left no heirs, and that she was entitled to such judgment.
Service of this rule was accepted by Aug. Bernau, signing as attorney, etc.
On November 14, 1890, on motion of the counsel of the widow, the rule was fixed for trial on November 21, and the attorney of absent heirs was ordered to be notified thereof. On November 10, 1890, Aug. Bernau accepted service of the motion as attorney of absent heirs.
On December 5, 1890, the court rendered a judgment in the rule ordering that it be made absolute. That Mrs. Widow M. Nash be recognized as the sole and only heir of her husband, and that she be sent into possession of all the property left by him upon her complying with Arts. 929 to 933 of the Civil Code. The judgment recited that the rule had been submitted by counsel, and that it had been made absolute by reason of the law and the evidence being in favor of plaintiff in the rule. On the 17th of December, 1890, the widow furnished bond with security conditioned that “ should, within the *1576 space of three years from date, any heir at law of James K. Nash appear and claim their share of his succession, that same would be delivered or accounted for by her, in which case the bond should be null and void, otherwise to remain in full force and effect.”
Mrs. Mary Lamb, the widow of James K. Nash, died on July 17, 1894, in New Orleans, leaving a will, in which she appointed W. O. Hart as her executor, without bond and with seizin.
The will was probated and Hart qualified as executor thereunder. An inventory having been ordered to be taken of the property belonging to the succession of Mrs. Nash, such inventory was made on the 26th of July, 1894. Certain real estate in the city of New Orleans was placed upon this inventory as “ belonging to the deceased in whole or in part as widow of James K. Nash, as per proceedings had in his succession.” Upon the application of the executor the inventory was approved and homologated.
On November 9, 1894, the executor applied for and obtained from the District Court (Divison E) an order for the sale at public auction of the real estate which had been inventoried on terms partly cash and partly credit; acts of sale to be passed before a notary public. The order was obtained on the allegation of the executor, that he had no funds in his hands belonging to the succession; that a sale was necessary to pay the debts of the deceased, the cost of building her a tomb as directed by the will and to pay the special legacies made.
On the 14th December, 1894, the auctioneer filed in court his proces verbal of his actions and proceedings under the order of sale directed to him.
By this proces verbal it appears that three of the pieces or lots of ground inventoried were adjudicated to John Otnott as the last and highest bidder for the sum of twenty-two hundred dollars. No deed of sale followed the adjudication. On January 23, 1895, the attorneys of the executors appeared in court in the succession of Mrs. Nash and suggesting that the property had been adjudicated to Otnott, as appeared by the proces verbal, and that he had failed to comply with his bill, obtained from the court a rule on the adjudicatee to show cause why he should not comply with the adjudication forthwith and pay the price thereof, or in default thereof that the property adjudicated to him be sold at his risk and expense and for her account.
On February 4, 1895, Otnott urged as cause:
*1577 1. That the property was inventoried in the succession of James K. Nash as property of the community existing between him and his wife, and it did not appear from the proceedings had in said succession or otherwise that his widow had acquired full and absolute title and ownership of her husband’s share of said property.
2. That the judgment rendered in the succession of the husband putting his surviving widow in community in possession of said property for want of lawful relatives under the provisions of Arts. 929 and 981 of the Oivil Code gave her no greater substantial rights in connection with said property than she had prior to its rendition, • and did not and could not deprive the lawful heirs of James K. Nash, if any exist, of their legal shares of and rights in said property.
8. That no evidence existed or had been placed of record in the Civil District Court or in the Conveyance Office of the parish of Orleans, showing that the husband died without leaving any forced or legal heirs, and in the absence of sufficient proof, that no such heirs survived him, his widow in community could not and did not acquire full and indefeasible title to said property.
4. That he had just been informed that said James K. Nash left collateral relatives surviving him who are now living, and a reasonable delay should be granted him to verify said information.
5. That all the requisite proceedings preliminary to the aforesaid judgment of possession had not been had.
6. That all the requisite proceedings for the sale of said property in the succession of the widow of Nash had not been had.
On the 28th day of April, 1896, the rule after a trial was made absolute, the court ordering the adjudicates, Otnott, to comply with the adjudication made to him within thirty days from the date of the signature of the judgment, and ordering in default of his so doing that the property adjudicated to him be sold at his risk and for his account.
From that judgment Otnott has appealed.
The opinion of the court was delivered by
Nicholls, C. J.
The articles of the Oivil Code which bear upon the issues before us are the following:
Article 917. When the deceased has left neither lawful descendants nor lawful ascendants, nor collateral relations, the law calls to *1578 his inheritance either the surviving husband or wife, or his or her natural children, or the State, in the manner and order hereafter directed.
Article 924. If a married man has left no lawful descendants nor ascendants, nor any collateral relations, but a surviving wife, not separated from bed and board from him, the wife shall inherit from him to the exclusion of any natural child or children duly acknowledged.
Article 930. The surviving husband or wife called to the succession of the. other who is deceased must cause the seals to be fixed on the effects thereof, and be authorized to take possession of the same by the judge of the place in which the succession is opened, after having caused a true and faithful inventory to be made by a notary, duly authorized to that effect by the judge, in the presence of a person appointed to defend the interests of the absent heirs of the deceased, in case there are any, and after giving good and sufficient security, as prescribed in the following article:
Article 931. The security to be given by the surviving husband or wife, who shall demand to be put in possession of the effects of the deceased husband or wife, is to be of the estimated value of those effects, to the end of securing the restitution of the estate, in case any heir should come forward within three years after his or hex" having been putin possession, which term being expired, the security shall remain discharged from his obligation.
Article 932. During the three years that the security furnished by the surviving husband or wife or natural children put in possession continues, they can not, in any manner, alienate the immovables by them thus possessed, unless it be under the authority of the court, at public auction, and in cases in which their alienation is necessary.
Article 933. The surviving husband or wife and natural children, who shall fail to fulfil any of the formalities or obligations prescribed in the preceding articles, shall be liable to damages toward the heir, if any should be incurred.
On the trial of the rule defendant offered in evidence a certified copy of a petition filed April 20, 1896, by Dennis Leavey and Mrs. Ann Nash, widow of Pierce Strange, in the Civil District Court of New Orleans, in which the latter, after averring herself to be a sister of James K. Nash, and the former to be his nephew, and that they were legal heirs of the said Nash, asked that W. O. Hart, as executor of Mary L. Nash, wife of James K. Nash, be eited, and that the *1579 property of the community between Nash and his wife (describing as part of said property that adjudicated to the defendant) be par-’ titioned between themselves and other mentioned heirs of James K.Nash, and the succession of Mary L. Nash, by a sale of said property at public auction. He also offered in evidence the testimony of the said Mary Ann Nash (Widow Strange) and Thomas F. Strange, taken to establish the heirship of the plaintiff in the partition suit above mentioned as heirs of James K. Nash.
The executor objected to the introduction of the evidence on the ground that the documents were irrelevant and inadmissible.
1. Because the copy of the petition filed by Dennis Leavey and others was inadmissible and irrelevant, having been filed long after the adjudication to defendant in rule, and therefore in nowise binding upon them, and because otherwise irrelevant to the issue in the case.
2. The testimony of Mrs. Ann Nash Strange was inadmissible, because neither she nor the persons referred to in her testimony were parties to this suit. They had made no claim up to the time of testifying to the property involved, and even if they had any claim, it was against the proceeds of sale and not against the property. The court overruled the objection on the ground that the objections raised went to the effect of the evidence and not to its admissibility. The evidence was received and- the executor reserved a bill of exceptions.
The necessities of this case do not require us to examine into and pass upon the regularity and validity of the proceedings which preceded the order of the District Court recognizing Mrs. Nash as heir of her husband and placing her in possession of the property which had belonged to the community between them. We may assume for the purposes of this litigation that they were strictly regular and that the wife held possession of the property in absolute good faith for over three years prior to her death. The question is (assuming such a condition of affairs) whether a purchaser at a judicial sale made in the succession of Mrs. Nash, who refuses to comply with his bid, can be legally forced to do so, when prior to paying the price and going into possession, parties claiming as heirs of the husband appear and institute a suit against the executor for the partition of the same property.
The executor claims that from the moment of the adjudication to *1580 Otnott the title to the property become absolutely vested in him and he could no longer recede from the purchase. He further claims that the creditors of Mrs. Nash from the moment of the adjudication acquired fixed rights upon the price, and therefore the situation has to be dealt with from the standpoint of the rights of “third parties” being involved in this controversy.
In Succession of Gassen vs. Palfrey (9 An. 560) the same position "was advanced by the administrator, the argument being that the 'purchaser would be protected by the decree, and had no ground for ¡apprehension. He cited a number of decisions in support of this contention. Of these, this court said they were all p etitory actions brought by persons claiming under those whose title had been divested by a judicial sale against the purchasers at such sale or their assigns after the sale had been consummated by the payment of the price and followed by a long possession of the thing sold on the part of the purchaser. That it recognized fully that doctrine, but that it was not applicable to the case before it, which was that of a purchaser at a judicial sale, who, before paying the price, or entering into possession of the thing sold, discovered irregularities in the proceeding which led to the sale, calculated to throw a cloud upon •his title. “For such a person,” said the court, “ there is a locus penitential afforded by the misconduct or negligence of those with whom he had contracted and who are the warrantors of his title. The presumption omnia rite aeta fuisse, created by the law for his protection, can not be invoked against him as an estoppel, although available to throw the burden of proof upon him of the irregularities of which he complains.”
In the case at bar, the ownership of the property sought to be ¡forced upon the purchaser is at issue, an objection more formidable ¡and radical than mere regularity of proceedings. Plaintiff invokes here, as did plaintiff in the Palfrey suit, a rule against a purchaser •which was intended for his protection. The present suit is not one where the purchaser at the succession sale having complied with his Ibid and gone into possession of the property, the heirs of the husband are seeking to recover as against him the property on the strength of the original title, while the defendant is resisting on the strength of the judicial proceedings recognizing the wife as heir, her subsequent possession for over three years and the sale made in her succession. Were this suit of that character, it might be granted that defendant would present strong grounds for protection.
*1581 It would by no means follow from this assumption that the administrator of a succession holding-in reality a title to only an undivided half of the property should be permitted to insist upon the consummation of an incomplete divestiture of the title of his co-owners. A shield for the benefit of purchasers buying on the faith of judicial proceedings and probate decrees should not be converted into a weapon in the hands of parties selling without actual rights. We scarcely think it is pretended that the effect of the decree recognizing Mrs. Nash as the heir of her husband and placing her in possession was, at the end of three years, to definitively fix her status as such, and to bar the rights of the real heirs of the husband to a. recovery of his succession, as against the wife and her succession. If, however, plaintiff means to assert here such a claim, it is utterly untenable. So far as the creditors of the succession of Mrs. Nash are concerned, they do not occupy the same position as would purchasers of that property who had completed their purchase and stood upon their rights as such. They have no fixed right upon the property, and hold “ under ” the rights of Mrs. Nash, and no.t “ beyond " them.
We think that the purchaser in this ease has made such a showing, that James K. Nash left at his death collateral relations who became his heirs as to entitle him to relief. The evidence which the court, allowed defendant to introduce oh the trial was properly admitted.
The rights of the heirs of the husband as between themselves and! the wife or her succession were not cut off by the succession sale. There is now pending a suit in which those heirs are asserting their-ownership of one-half of this property. The fact that they did not do so until after the institution of this proceeding, and that they are not parties to the same, are, in this controversy, immaterial facts. The important- fact is the existence of the rights themselves. This, fact the defendant was entitled to show.
For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed. It is now ordered and adjudged that the rule taken against defendant be dismissed, with costs in both courts.